IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIELI CORPORATION and DANIELI &
C. OFFICINE MECCANICHE S.P.A.,

    *Plaintiffs*,

  v.

SMS GROUP, INC., SMS GROUP GMBH,
and STEEL DYNAMICS, INC.,

    *Defendants*.

Civil Action No. 2:21-cv-1716

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

## I. INTRODUCTION

Plaintiffs Danieli Corporation and Danieli & C. Officine Meccaniche S.p.A. (collectively "Danieli") filed a four-count amended complaint ("Amended Complaint") against Defendants SMS Group, Inc. and SMS Group GMBH (collectively "SMS") and Steel Dynamics, Inc. ("SDI"). (ECF No. 171). Relevant to the pending motions, Danieli's Amended Complaint alleges at Count I that SDI breached the confidentiality provision of a Non-Disclosure Agreement ("NDA") between SDI and Danieli by disclosing Danieli's confidential information to SMS during a bidding process. (*Id.* ¶¶ 96-105). At Count IV, Danieli asserts that SDI was unjustly enriched through SDI's disclosure and use of Danieli's confidential information. (*Id.* ¶¶ 133-38). In response, SDI filed a single-count counterclaim against Danieli in its answer. (ECF No. 181). SDI alleges at Count I that Danieli breached an exclusivity provision contained in the parties' NDA. (*Id.* ¶¶ 37-46).

1

Pending before the Court is Danieli's Motion for Summary Judgment against SDI as it relates to SDI's counterclaim. (ECF No. 486). Also pending before the Court is SDI's Motion for Summary Judgment Against Danieli as to Counts I and IV of Danieli's Amended Complaint, and SDI's counterclaim. (ECF No. 498). The Court held oral argument regarding these motions on September 30, 2024. (ECF No. 589). For the reasons articulated below, the Court denies Danieli's motion as it relates to liability and grants Danieli's motion as to damages. Thus, SDI's counterclaim may move forward, but SDI is limited to seeking nominal damages. The Court grants summary judgment in favor of SDI on Count IV, and limits Danieli to seeking nominal damages at Count I. The Court denies SDI's motion as it relates to SDI's counterclaim, holding that there are several genuine issues of material fact that preclude summary judgment.

## II.    FACTUAL BACKGROUND[1]

SDI is an American steel manufacturer based in Fort Wayne, Indiana. (ECF No. 496, ¶1); (ECF No. 531, p. 2). Danieli supplies equipment to customers in the metals industry. (ECF No. 496, ¶ 2); (ECF No. 531, p. 2). SMS works in the same field and competes with Danieli. (ECF No. 496, ¶ 3); (ECF No. 531, p. 2). On or around March 19, 2018, Danieli began negotiating with SDI to provide steel equipment for SDI's new project located in Terre Haute, Indiana. (ECF No. 492, ¶ 4); (ECF No. 496, ¶ 5). The Terre Haute project was codenamed "Project Coho." (ECF No. 492, ¶ 4); (ECF No. 496, ¶ 6).

In connection with Project Coho, SDI and Danieli entered into an NDA on March 27, 2018. (ECF No. 492, ¶ 10); (ECF No. 496, ¶ 10). Under the NDA, "The Discloser agrees that it will not disclose Confidential Information to any person or permit any person to use or copy Confidential

---

[1] This litigation has a lengthy procedural and factual history. At this stage, the Court recounts only the material facts relevant to the motions pending before it.

Information, for any purpose other than in connection with the 'Potential Transaction.'" (ECF No. 171-1, pp. 2-3). The NDA defines the "Potential Transaction" as follows: "[t]he exchange of Confidential Information is for the purpose or purposes of discussions relating to and evaluation of a transaction between the Parties . . . specifically involving the development of 'Project [Coho].'" (*Id.* at 1).

Further "Confidential Information" is defined as:

> all information disclosed in connection with the Potential Transaction, whether (a) prepared by the Discloser and/or its Affiliates, any of their respective Representatives or otherwise or gathered by inspection, (b) in written oral, electronic or other form, (c) identified as 'confidential' or otherwise, (d) prepared prior to, on or after the date of this Agreement, that is furnished to the Recipient or any of its Representatives by or on behalf of the Discloser and/or its Affiliates, regardless of the manner or medium in which such Confidential Information is furnished, including all information and documentation which the Discloser or any of its Affiliates is obligated to treat as confidential pursuant to any course of dealing or any agreement to which the Discloser or any of its Affiliates is a party (e) all information and documentation relating to the financial, tax, accounting and other information of the Discloser or any of its Affiliates regarding business operations, prospects, value and/or structure, marketing practices and techniques, business strategies and capabilities, business plans, and relationships with customers, suppliers, principals, employees, financing sources, hedging counterparties, contracting counterparties and others, and any information that is a trade secret within the meaning of applicable trade secret law and other documentation and materials prepared by the Recipient or any of its Representatives, containing or based in whole or in part on any Confidential Information furnished by the Discloser or its Affiliates or any of their respective Representatives . . . .

(*Id.* at 1-2).

The NDA includes a choice of law provision that states New York law will govern the NDA. (*Id.* at 5). The parties do not dispute the applicability of this provision. (ECF No. 531, p. 5); (ECF No. 496, ¶ 14). Finally, the NDA includes an exclusivity clause which provides:

> Danieli Corporation agrees that, for a period of six (6) months after the Effective Date of this Agreement, none of Danieli Corporation, its Affiliates, and its and their respective Representatives, will negotiate, discuss, solicit, or enter into or commit to enter into an agreement with any party with its registered office located in the

> USA territory (other than Steel Dynamics, Inc. or a Steel Dynamics, Inc. Affiliate) permitting or relating to use of the technology associated with or contemplated by the Potential Transaction or Project COHO."

(ECF No. 171-1, p. 5). In relation to Project Coho, the period of exclusivity became effective on March 27, 2018, and expired on September 27, 2018. (ECF No. 492, ¶ 40); (ECF No. 496, ¶ 10). SDI alleges that, to win Project Coho business, Danieli planned to provide detailed information about its QSP technology to SDI.[2] (ECF No. 496, ¶ 9). Danieli disputes this claim and argues that it never proposed its QSP technology for Project Coho. (ECF No. 531, p. 3). Instead, Danieli states that it offered its "MiDA" technology for the project. (*Id.*).

Meanwhile, during the summer of 2017, before negotiations for Project Coho began, Danieli began negotiating with SDI's United States-based competitor, Nucor, to provide equipment, including Danieli's QSP technology, for a plant in Gallatin, Kentucky. (ECF No. 496, ¶ 21); (ECF No. 492, ¶ 110). When it began discussions with SDI regarding Project Coho, Danieli did not inform SDI of its ongoing negotiations with Nucor. (ECF No. 496, ¶ 22); (ECF No. 531, p. 12). On April 6, 2018, ten days after SDI and Danieli executed the NDA for Project Coho, Danieli submitted a commercial offer to Nucor for the Gallatin plant, which included Danieli's QSP technology. (ECF No. 496, ¶ 24); (ECF No. 531, p. 13). On June 8, 2018, and August 17, 2018, Danieli submitted revised commercial offers to Nucor which also included its QSP technology. (ECF No. 496, ¶¶ 25-26); (ECF No. 531, p. 14).

---

[2] Danieli's QSP technology has been discussed at length in this litigation by both the parties and the Court. *See Danieli Corp. v. SMS Grp., Inc.*, No. 2:21-CV-1716, 2024 WL 3791894 (W.D. Pa. Aug. 13, 2024). Danieli has discussed different variations of its QSP technology. *See id.* (discussing "original QSP caster technology," "QSP1," and "QSP-DUE"). Complicating matters, Danieli has been less than clear regarding a definition of each term. (ECF No. 534, pp. 29-32, 50). For the purposes of deciding the pending motions, the Court will generally refer to Danieli's "QSP technology" as a term encompassing all potential variations of the technology at issue.

At the same time SDI was exploring Project Coho, it was planning to construct a steel mill in Sinton, Texas. (ECF No. 496, ¶ 27); (ECF No. 492, ¶¶ 45-47). The Texas plant was codenamed "Project Buffalo." (ECF No. 496, ¶ 27); (ECF No. 492, ¶¶ 45-47). When bidding began for Project Buffalo in the late summer of 2018, Danieli and SMS were considered as potential suppliers. (ECF No. 492, ¶ 52); (ECF No. 496, ¶ 31). For Project Buffalo, Danieli proposed its QSP technology – the same technology it proposed for the Nucor plant. (ECF No. 496, ¶ 33); (ECF No. 531, p. 16). Thus, between July and September 2018, Danieli was negotiating with both SDI and Nucor concerning its QSP technology. (ECF No. 496, ¶ 41); (ECF No. 531, p. 20). In August 2018, Danieli was planning to travel to the United States for meetings with both Nucor and SDI in the same week, specifically, to meet with Nucor on September 4-5, 2018, and with SDI on September 7, 2018. (ECF No. 496, ¶ 42); (ECF No. 531, p. 21).

On September 27, 2018, Glenn Pushis, SDI's vice president, sent Paolo Losso, Danieli's corporate president, a proposed agreement including nondisclosure provisions "for the discussions on the projects to protect both of us." (ECF No. 496, ¶ 82); (ECF No. 531, p. 45). The proposed NDA was different from the parties' existing NDA signed on March 27, 2018. (*Id.*). In response, Mr. Losso asked Mr. Pushis whether the NDA Mr. Pushis had sent was for Project Buffalo, and Mr. Pushis responded that it was to cover both Project Buffalo and Project Coho. (ECF No. 496, ¶ 83); (ECF No. 531, p. 46). Mr. Losso never signed or returned the draft agreement. (ECF No. 496, ¶ 84); (ECF No. 531, p. 46). Danieli asserts that after this email was sent, the parties orally agreed that the NDA would "apply to cover the parties' exchanges of Confidential Information related to Project Buffalo." (ECF No. 531, p. 46). The parties dispute whether the entire NDA was extended to cover Project Buffalo, or whether only the confidentiality provision was extended. (ECF No. 496, ¶ 45); (ECF No. 531, p. 22). In discussing applying the parties' existing NDA to

5

Project Buffalo, neither Mr. Losso nor Mr. Pushis suggested or agreed to any changes to the Project Coho NDA. (ECF No. 496, ¶ 46); (ECF No. 531, p. 24).

Danieli and Nucor continued to negotiate throughout 2018 and held meetings on or around July 16, 2018, August 24, 2018, August 28, 2018, and September 26, 2018. (ECF No. 492, ¶ 113); (ECF No. 496, ¶ 41). On September 26 through September 28, 2018, Danieli conducted technical meetings with Nucor regarding the Gallatin plant. (ECF No. 496, ¶ 48); (ECF No. 531, p. 25). On September 27, 2018, Danieli submitted a budgetary proposal to SDI for Project Buffalo. (ECF No. 531, p. 26); (ECF No. 496, ¶ 51). As noted above, the parties' Project Coho NDA expired on September 27, 2018. In early November 2018, Nucor selected Danieli to provide its QSP technology for the Gallatin plant. (ECF No. 531, p. 29); (ECF No. 496, ¶ 57). Danieli notified SDI that it was providing its QSP technology to Nucor's Gallatin plant in the same month. (ECF No. 492, ¶ 122); (ECF No. 496, ¶ 54). Danieli alleges that after learning about the QSP technology Danieli had sold to Nucor, SDI held meetings with Danieli on or around December 3, 2018, February 14, 2019, February 15, 2019, February 28, 2019, March 1, 2019, and April 15, 2019, to discuss the technical aspects of Project Buffalo. (ECF No. 492, ¶ 141). Danieli further alleges that after learning of Danieli's QSP technology sale to Nucor, SDI visited Danieli's reference plant in Russia from February 28 to March 2, 2019. (*Id.* ¶ 142).

On April 27, 2019, SDI informed Danieli that SMS had won the bid for the majority of Project Buffalo. (ECF No. 531, p. 36); (ECF No. 496, ¶ 65). On May 2, 2019, SDI awarded Danieli a contract for the Continuous Color Coating Line ("paint line") at Project Buffalo. (ECF No. 496, ¶ 71); (ECF No. 531, p. 39). The final contract price for the paint line was $30,989,000. (*Id.*). The next day, Mr. Pushis sent Mr. Losso a Letter of Intent ("LOI") for the paint line. (ECF No. 531, p. 39); (ECF No. 496, ¶ 72). On May 11, 2019, Mr. Losso sent an email to Mr. Pushis

attaching a signed copy of the LOI, which referred to "the existing confidentiality and nondisclosure agreement previously executed by the Parties in connection with Project Buffalo." (*Id.*). Mr. Losso replied to Mr. Pushis stating he could not find a signed copy of the NDA for Project Buffalo and requested Mr. Pushis look for it in his files. (ECF No. 496, ¶ 73); (ECF No. 531, p. 39). Two days later, Mr. Pushis emailed Mr. Losso and stated the only NDA SDI had in its files was the NDA between SDI and Danieli for Project Coho, "but nonetheless it is an NDA with Danieli." (ECF No. 496, ¶ 74); (ECF No. 531, p. 40). Mr. Losso stated that he remembered that NDA and asked, "How do we go by Buffalo? We say the one for C[oho] applies retroactively to Buffalo as well?" (ECF No. 496, ¶ 75); (ECF No. 531, p. 41). The parties dispute whether Mr. Losso and Mr. Pushis agreed to apply the NDA retroactively.[3] (ECF No. 496, ¶ 76); (ECF No. 531, p. 41). The LOI Danieli and SDI signed on May 15, 2019, stated that "[t]he relationship and agreements established by this LOI are subject to the existing confidentiality and non-disclosure agreement previously executed by the Parties *in connection with Project C[oho] on March 27th, 2018.*" (ECF No. 496, ¶ 77 (emphasis added)); (ECF No. 531, p. 41).

Danieli filed a four-count Amended Complaint on August 19, 2022. (ECF No. 171). At Count I, Danieli alleges that SDI breached the confidentiality provision of the NDA by providing confidential information regarding Danieli's bid to SMS during the Project Buffalo bidding process. (*Id.* ¶¶ 96-105). Danieli is seeking damages for breach of the NDA, injunctive relief

---

[3] Confusingly, in its Response to SDI's Concise Statement of Material Facts, Danieli disputed that the parties intended to apply the NDA retroactively. (ECF No. 531, p. 41). However, at oral argument, when asked by the Court, Danieli stated: "Danieli's position is [the NDA] was fully retroactive to cover all of the discussion relating to [Project Buffalo]." (ECF No. 591, p. 60). Viewing the pleadings together with Danieli's statements at oral argument, Danieli's position appears to be that the confidentiality provision of the NDA was fully retroactive with no temporal gap. Danieli contends that because the initial six-month exclusivity period was expired, the exclusivity provision was never extended or revived.

requiring SDI to return to Danieli, pursuant to protocols to be agreed to by Danieli, all Danieli confidential information directly or indirectly relating to the Project Buffalo plant caster, or its technology, specifications, design, price, or operation. (*Id.* ¶ 105). Additionally, Danieli alleges that SDI is bound to indemnify Danieli for the harm caused by such breach, as well as for Danieli's investment to enforce its rights under the NDA. (*Id.*).

At Count IV, Danieli alleges:

> As a result of its improper disclosure of Danieli's confidential information to SMS, SDI has wrongfully taken Danieli's business opportunity and proprietary technology. SDI improperly used Danieli's confidential information to help SMS, the vendor preferred by SMS executives, to win the bid for the Sinton plant even though Danieli's caster was preferred by SDI's engineers.

(*Id.* ¶ 134). In sum, Danieli alleges that SDI was unjustly enriched when Danieli granted a benefit to SDI, Danieli's confidential information, that SDI was otherwise unable to obtain. (*Id.*) Danieli requests that SDI be "divested of [its] unjustly gained enrichment" and states that SDI "should disgorge profits and pay restitution so that Danieli is returned to the status quo." (*Id.* ¶ 138). SDI moved for summary judgment seeking to limit Danieli to nominal damages at Count I and seeking judgment in its favor on Count IV. (ECF No. 498).

On September 2, 2022, SDI filed an Amended Answer, Affirmative Defenses, and Counterclaim. (ECF No. 181). In its counterclaim, SDI alleges that Danieli breached the exclusivity provision of the parties' NDA when it engaged in negotiations, solicitations, and agreements regarding its QSP technology with Nucor. (*Id.* ¶¶ 37-46). SDI acknowledges that there is a dispute over when, if ever, the six-month exclusivity period began as applied to Project Buffalo but states:

> Regardless of when the six-month exclusivity provision began, Danieli was in negotiations, discussions, and solicitations regarding entering into an agreement and was therefore disclosing to and/or permitting SDI competitor Nucor to use the

same technology to which the NDA was applicable during the six-month exclusivity period in violation of the NDA.

(*Id.* ¶ 43). SDI seeks "damages in an amount to be determined later" and alleged that under the NDA, SDI is entitled to recover attorneys' fees from Danieli. (*Id.* ¶¶ 45-46). Danieli moved for summary judgment seeking judgment in its favor on SDI's counterclaim, or in the alternative, seeking to limit SDI to nominal damages. (ECF No. 486). SDI moved for summary judgment asking the Court to find for SDI on its counterclaim. (ECF No. 498).

## III.    STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

The Court notes that Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *see also Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (stating that the nonmoving party must "point[] to sufficient cognizable evidence to create material

issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial"). "[A] complete failure of proof concerning an essential element of the nonmoving party's [claim] necessarily renders all other facts immaterial," and thus "there can be 'no genuine [dispute] as to any material fact'" sufficient to survive the motion. *Id.* at 322–23. Moreover, judgment as a matter of law becomes appropriate. *See id.* at 323; *accord Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.")

## IV.    ANALYSIS

### A.  SDI's Counterclaim (Breach of Contract)

Danieli asks the Court to grant judgment in its favor on SDI's counterclaim for breach of the NDA, or in the alternative, to limit SDI to nominal damages.[4] SDI asks the Court to grant summary judgment for SDI on its counterclaim, holding that SDI is entitled to nominal damages. The four main issues in relation to this count are: (1) whether the NDA applied to Danieli's QSP technology; (2) whether the undisputed facts show that Danieli breached the NDA; (3) whether SDI implicitly waived its breach of contract claim; and (4) whether SDI's requested damages are sufficient to support its counterclaim. For the reasons discussed below, the Court grants in part and denies in part Danieli's summary judgment motion, holding that Danieli is not entitled to summary judgment with respect to liability for breach, but limiting SDI to seeking only nominal damages. The Court denies SDI's motion for summary judgment.

---

[4] A motion for partial summary judgment is reviewed under the same standard as a motion for full summary judgment. *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994).

i.    The exclusivity provision applied to Danieli's QSP technology.

Danieli argues that the exclusivity provision of the NDA only applied to Danieli's "MiDA" technology. (ECF No. 491, p. 6).  SDI asserts that there is no evidence "that MiDA was the *only* technology proposed, contemplated, or at issue, or that only MiDA, and not QSP-DUE® technology, was covered by the NDA."  (ECF No. 525, p. 13).  SDI highlights several communications between the parties where MiDA was not once mentioned. (*Id.* at 13–14).  SDI contends that between Danieli's binding judicial admissions and the evidence demonstrating the parties' contemplation that the NDA, as a whole, applied to QSP technology, Danieli's motion should be denied. (*Id.* at 15).  The Court holds that the exclusivity provision of the NDA includes Danieli's QSP technology.

As discussed above, the parties entered into the Project Coho NDA on March 27, 2018. (ECF No. 491, p. 6).  The NDA contained an exclusivity clause under which Danieli agreed that it would not "negotiate, discuss, solicit, or enter into or commit to enter into an agreement with any party with its registered office located in the USA territory, other than [SDI] permitting or relating to use of the technology associated with or contemplated by the Potential Transaction or Project Coho." (ECF No. 171-1, p. 5).  The NDA does not define what technology is associated with Project Coho.  That said, Danieli states in its Amended Complaint that "[t]he NDA was originally signed between the parties to cover the proposal for the *QSP-DUE® casting technology* for . . . [Project Coho]." (ECF No. 171, ¶ 65 (emphasis added)).  Danieli also stated that to win Project Coho, "Danieli planned to provide detailed information *about its QSP-DUE® casting technology* to SDI." (*Id.* ¶ 63 (emphasis added)).  Danieli now, years after filing this action and months after allegedly learning about the "mistake" in its pleading, tries to back-pedal from its own complaint arguing (again, contrary to its own pled allegations) that "the parties never agreed

11

to any exclusivity concerning Danieli's QSP® caster." (ECF No. 491, p. 6). Instead, Danieli argues that the exclusivity provision applied *only* to Danieli's MiDA technology—a technology that had never been at issue in this extensive litigation. (*Id.*). Danieli tries to explain away its allegations in its Amended Complaint, the operative complaint in this litigation, by arguing that its statements about the QSP technology were mistaken and should be disregarded. (ECF No. 550, pp. 7-10).[5]

The Court considers Danieli's statements in its Amended Complaint asserting that the NDA extended to its QSP technology to be binding judicial admissions. A judicial admission is an unequivocal statement of fact which would otherwise require evidentiary proof. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972). Judicial admissions are binding for the purpose of the case in which the admissions are made. *Id.*; *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (stating that facts "expressly conceded" in a complaint constitute judicial admissions). Judicial admissions, however, "may be withdrawn by amendment." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). If a party does not withdraw an admission, that party remains bound. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) (holding that a claim was foreclosed based on an admission in the plaintiff's complaint). Here, the exclusivity provision applied to the technology contemplated for or associated with Project Coho. Danieli admitted in its Amended Complaint that it proposed QSP technology for Project Coho and disclosed information about QSP technology in connection with the same. Thus, reading Danieli's Amended Complaint, the NDA's exclusivity

---

[5] After being confronted with the mutual exclusivity of Danieli's pleadings in its Amended Complaint and the argument it now makes with respect to exclusivity, Danieli moved for leave to file a second amended complaint. (ECF No. 598). The Court denied that Motion. (ECF No. 612). Danieli is bound by the facts that it previously pled and stood upon.

provision extended to its QSP technology.  The statements that the NDA was originally signed to cover the proposal of QSP technology, (ECF No. 171, ¶ 65), and that Danieli provided information regarding its QSP technology to SDI in connection with Project Coho, (*id.* ¶ 63), are unequivocal statements of fact.  In other words, the statements are binding judicial admissions that the exclusivity provision in the NDA applied to *all* technology associated with or contemplated by Project Coho – including the QSP technology.[6]  Since Danieli has not withdrawn its admissions by amending its complaint, the statements are still binding on Danieli.  Danieli may not now argue that the NDA did not extend to its QSP technology.

The Court acknowledges that it may discount Danieli's admissions if it finds a compelling reason to do so.  *Est. of Singletary v. City of Philadelphia*, No. 21-3269, 2023 WL 5127126, at *3 n.19 (3d Cir. Aug. 10, 2023).  Further, judicial admissions "may be disregarded in the interests of justice."  *Schomer v. Westmoreland Cnty.*, No. CV 20-790, 2022 WL 17905267, at *7 (W.D. Pa. Nov. 17, 2022) (internal citations omitted).  Exceptional circumstances warranting disregarding a judicial admission include "where the admitted fact is clearly untrue, or a party was laboring under a mistake when the admission was made."  *Koger v. Robert Half Int'l*, No. 2:05-cv-850, 2007 WL 712225, at *8 (W.D. Pa. Mar. 7, 2007).  Here, the Court will not disregard Danieli's admissions in its legally operative complaint.  There are no exceptional circumstances present, nor is there any evidence, beyond Danieli's self-serving eleventh-hour statements, that the admissions are clearly untrue.

---

[6] Based on Danieli's binding judicial admissions, the Court holds that the parties entered into the NDA with the mutual agreement that the exclusivity provision extended to QSP technology.  It is irrelevant whether the parties also later shifted their focus to MiDA technology, especially given the "or contemplated by" language of the exclusivity provision.

The NDA does not provide any support for Danieli's argument – it does not mention MiDA technology at all. (ECF No. 171-1). Danieli relies on SDI Chief Executive Officer Mark Millett's deposition testimony to support its contention that the exclusivity provision applied only to MiDA technology. (ECF No. 491, pp. 9-11; ECF No. 492, ¶¶ 37, 90). However, Mr. Millett's deposition testimony does not support that contention. Mr. Millett testified that he was concerned about exclusivity in relation to MiDA technology. (*Id.*). All this testimony shows is that MiDA was included among the technologies proposed for Project Coho. It does not foreclose the possibility that QSP technology was also considered. Thus, this testimony does not support disregarding Danieli's judicial admissions. Danieli also points to a March 23, 2018, email thread in which SDI requested that the NDA contain an exclusivity provision as evidence that the provision applied only to the MiDA technology. (ECF No. 492, ¶¶30-31). The cited email does not mention MiDA technology. It merely requests "exclusivity on using the technology." (*Id.*). The vague term "technology" could refer to MiDA, QSP, or both technologies. This email is unilluminating. Likewise, SDI President Barry Schneider's testimony does not disprove that the NDA applied to QSP technology. (*Id.* ¶ 32). Mr. Schneider testified about the function of MiDA technology. (*Id.*). Like the other evidence Danieli proffered, this testimony merely shows that Danieli and SDI discussed MiDA. It does not preclude the possibility that QSP technology was contemplated for Project Coho. In sum, Danieli has produced no evidence that it was "clearly untrue" that the NDA's exclusivity provision extended to its QSP technology.

Danieli attempts to escape its own judicial admissions by claiming that it "submitted its pleading before SDI filed its Counterclaim, before any discovery on that Counterclaim, and at a time when Danieli's proposal for Project Coho had no bearing on any party's claims or defenses." (ECF No. 550, p. 12). This argument does not hold water. Federal Rule of Civil Procedure 11

still governed Danieli's pleadings. Thus, by filing the Amended Complaint, Danieli certified to the best of its knowledge that the statements about the NDA's exclusivity provision were formed under "an inquiry reasonable under the circumstances" and had evidentiary support. Fed. R. Civ. P. 11. The fact that Danieli did not know that SDI would file a counterclaim does not excuse what Danieli essentially claims is careless pleading that it stood upon for years—indeed, until it became a hindrance to one of its arguments in response to a motion for summary judgment. Moreover, the argument that Danieli "would never have agreed to abstain from marketing" its QSP technology in the United States in 2018 (ECF No. 491, p. 14), is both self-serving and meaningless in light of Danieli's judicial admissions.

It would not serve the interests of justice for the Court to disregard Danieli's admissions. Danieli claims that it relied on Mr. Losso's statement that Project Coho dealt with QSP technology when drafting its complaint. (ECF No. 550, p. 13). During a deposition conducted on December 16, 2023, Mr. Losso tried to refute his previous statement by noting that Danieli offered SDI MiDA technology for Project Coho. (*Id.* at 13-14).[7] Thus, Danieli has been on notice since December 16, 2023, that statements in its Amended Complaint were allegedly mistaken. Now, during the summary judgment stage, over nine months since Mr. Losso's deposition, Danieli attempts to argue that it *could* amend its pleading. (ECF No. 550, p. 8 n. 2). Before October 10, 2024, it has never sought to do so. Instead, Danieli participated in over nine months of litigation, allowing SDI to reasonably rely on its admissions in the Amended Complaint. Danieli will not be allowed to

---

[7] Like the other evidence Danieli has presented to the Court, this testimony does not preclude the possibility that QSP technology was considered for Project Coho. It simply establishes that MiDA technology was also considered by the parties.

benefit from such bait-and-switch tactics at this late stage of litigation.[8]  The Court holds Danieli to its binding judicial admissions and holds that the exclusivity provision applied to QSP technology – not merely the MiDA technology as Danieli argued.

      ii.    <u>Danieli breached the Project Coho NDA as a matter of law.  There is a genuine issue of material fact as to whether Danieli breached the NDA in relation to Project Buffalo.</u>

Danieli argues that SDI's counterclaim fails because it alleges a breach of an expired contract term.  Specifically, Danieli contends that "[t]here is no evidence in the record that the parties ever agreed to any exclusivity concerning [Project Buffalo] after the Project Coho exclusivity expired on September 27, 2018."  (ECF No. 491, p. 14).  Danieli asserts that "the existing NDA (whose exclusivity period had already expired) was merely extended to cover Confidential Information exchanged between the parties during the [Project Buffalo] bidding."  (*Id.*). It was not intended to constrain Danieli's ability to offer its QSP technology.  (*Id.*).  Thus, Danieli contends, the parties never agreed to revive the expired exclusivity provision upon extension of the same NDA for another transaction.  (*Id.* at 15).

SDI asserts that it is immaterial whether the exclusivity period was extended or revived to apply to Project Buffalo.  Rather, according to SDI, the evidence establishes that Danieli breached the exclusivity provision during the initial six-month period related to Project Coho.  (ECF No. 525, p. 10).  As discussed above, the Court holds that the exclusivity provision of the Project Coho NDA covered Danieli's QSP technology during the initial six-month period.  During this period,

---

[8] Danieli further argues that SDI's answer denied that Danieli's proposal for Project Coho included QSP technology.  (ECF No. 550, p. 12).  The Court does not view SDI's response as an admission denying that QSP technology was contemplated for Project Coho.  Thus, the Court disregards this argument.

SDI contends that Danieli submitted a proposal to Nucor, SDI's main United States rival, to provide its QSP technology for the Gallatin plant. (*Id.* at 12). Because of this, SDI asserts that Danieli breached the exclusivity provision. (*Id.*). The Court holds that, as a matter of law, Danieli breached the exclusivity provision of the NDA with regards to Project Coho. However, there is a genuine issue of material fact as to whether Danieli breached the NDA as applied to Project Buffalo.

In Danieli's Concise Statement of Undisputed Facts, Danieli acknowledges that Mr. Losso met with representatives from Nucor in or around July 2017 to pitch Danieli's QSP technology for Nucor's existing plant. (ECF No. 492, ¶ 110). Danieli and SDI entered into the NDA on March 27, 2018. (*Id.* ¶ 10). Thus, the initial exclusivity period preventing Danieli from negotiating, discussing, soliciting, or entering into a commitment with any party located in the United States relating to its QSP technology became effective on March 27, 2018, and expired on September 27, 2018. (*Id.* ¶ 40). Danieli admits that it continued to negotiate with Nucor regarding its QSP technology "throughout 2018 and held meetings on or around at least July 16, 2018, August 24, 2018, August 28, 2018, and September 26, 2018." (*Id.* ¶ 113). Thus, according to Danieli's own Concise Statement of Undisputed Facts, Danieli breached the exclusivity clause of the NDA by negotiating, discussing, and soliciting Nucor, a company based in the United States, regarding its QSP technology during the initial six-month exclusivity period.

Danieli seeks to avoid liability for these breaches by arguing that SDI's counterclaim only alleges that Danieli breached the exclusivity period as it relates to Project Buffalo. (ECF No. 550, p. 10). In other words, Danieli argues that SDI did not properly allege that Danieli breached the *original* NDA by offering the same technology for Project Coho and Nucor Gallatin. (*Id.*). Danieli correctly states that district courts have "broad discretion to disallow the addition of new theories

of liability at the eleventh hour." (*Id.* at 11); *Carr v. Gillius Assoc. Indus., Inc.*, 227 F. App'x 172, 176 (3d Cir. 2007). Nonetheless, Danieli's argument fails. SDI is not raising a new theory of liability. While SDI's counterclaim focuses its attention on Project Buffalo, SDI alleged that Danieli breached the NDA both during the initial six-month exclusivity period applicable to Project Coho and during the later alleged exclusivity period that applied to Project Buffalo. For example, in its answer and counterclaim, SDI alleged that "at the time Danieli began discussions with SDI regarding Project C[oho], Danieli was 'still involved in the negotiations for the [Nucor Gallatin Plant].'" (ECF No. 181, ¶ 18). SDI also alleged that "[r]egardless of when the six-month exclusivity provision began, Danieli was in negotiations, discussions, and solicitations regarding entering into an agreement and was therefore disclosing to and/or permitting SDI competitor Nucor to use the same technology to which the NDA was applicable during the six-month exclusivity period in violation of the NDA." (*Id.* ¶ 43). Such a claim necessarily includes the theory of liability that Danieli breached the NDA's initial exclusivity period as applied to Project Coho. The Court holds that Danieli violated the exclusivity provision of the NDA, as applied to Project Coho, when it negotiated with Nucor regarding its QSP technology between March 27, 2018, and September 27, 2018. Specifically, Danieli breached the exclusivity provision when it held meetings with Nucor regarding its QSP technology on July 16, 2018, August 24, 2018, August 28, 2018, and September 26, 2018.

Whether Danieli breached the exclusivity provision of the NDA as applied to Project Buffalo is more complicated. It is undisputed that Danieli and SDI agreed to apply the NDA from Project Coho to Project Buffalo. (ECF No. 496, p. 9; ECF No. 492, pp. 17-18 ("The parties agreed to extend the Coho NDA to Project Buffalo.")). Despite agreeing that the parties made the Project Coho NDA, which contained an exclusivity provision, applicable to Project Buffalo, Danieli

argues that the exclusivity provision of the NDA did not apply to Project Buffalo.  (ECF No. 492, pp. 18-28).  This argument is undermined by Danieli's own Concise Statement of Undisputed Facts.  On May 13, 2019, Mr. Losso and Mr. Pushis exchanged emails about a LOI for Danieli to supply a paint line for Project Buffalo.  (ECF No. 492, p. 19).  In discussing an NDA between the parties for Project Buffalo, Mr. Losso stated: "How do we go by Buffalo? We say the one for COHO applies retroactively to Buffalo as well?"  (*Id.* at 20).  Mr. Pushis responded: "I don't have a problem with the NDA that [SDI's Executive Vice President and Chief Financial Officer] has signed for COHO working for this project also."  (*Id.* at 21).  Mr. Losso subsequently proposed the following language for the LOI: "The relationship and agreements established by this LOI are subject to the existing confidentiality and non-disclosure agreement previously executed by the Parties in connection with Project ~~Buffalo~~ COHO on March 27th, 2018."  (*Id.* at 21).  Mr. Pushis responded: "That works just fine . . . I guess this was my understanding all this time anyhow." (*Id.*).  Danieli admits that "[n]o individual provision of the Coho NDA was discussed by Losso and Pushis."  (*Id.* at 24 (internal citations omitted)).

Despite this concession, Danieli argues that the exclusivity provision of the NDA did not apply to Project Buffalo.[9]  The NDA that originally applied to Project Coho, that was extended to cover Project Buffalo by Mr. Losso and Mr. Pushis's agreement, contained an integration clause. (ECF No. 171-1, ¶ 10 ("**Entire Agreement.**  This agreement sets forth the entire understanding between the Parties.  It may only be amended in writing and signed by both parties.")).  Danieli's

---

[9] Danieli asserts that Mr. Losso agreed to apply only the confidentiality aspect of the NDA.  (ECF No. 492, pp. 18-19).  Danieli does not explain how Mr. Losso could pick and choose which provisions of the NDA to apply without discussing any individual portion with Mr. Pushis. Further, the testimony that Danieli cites in support of this contention does not show that Mr. Losso only intended to revive the confidentiality provision of the NDA.

argument is unconvincing. It apparently admits that the NDA was retroactively applied to Project Buffalo.[10] (ECF No. 591, p. 60). It admits that the parties did not agree to make any changes to the Project Coho NDA as applied to Project Buffalo. It presumably acknowledges that the NDA was an integrated agreement. Yet Danieli asks the Court to find that the confidentiality provision of the agreement applies and the exclusivity provision does not. This argument defies both common sense and law. *See U.S. Bank, Nat'l Ass'n v. UBS Real Est. Sec. Inc*., 205 F. Supp. 3d 386, 413 (S.D.N.Y. 2016) (stating that a party "may not pick and choose which provisions suit its purposes . . . . A contract should be read to give effect to all its provisions.") (internal citations omitted). The Court holds that the parties intended all of the Project Coho NDA to apply to Project Buffalo – including the exclusivity provision.

Thus, the remaining issue with regards to the Project Buffalo NDA is determining when the six-month exclusivity period began and ended. The parties agree that the initial six-month exclusivity period stemming from the Project Coho NDA expired on September 27, 2018. It is also undisputed that on September 27, 2018, Mr. Pushis sent Mr. Losso a proposed NDA. (ECF No. 496, ¶ 82); (ECF No. 492, ¶ 63). This NDA was different from the Project Coho NDA and was never adopted by the parties. (ECF No. 496, ¶¶ 82,84); (ECF No. 492, ¶¶ 63-66). Danieli asserts that "on or after October 6, 2018, . . . Mr. Losso and Mr. Pushis agreed that the existing NDA would apply to cover the parties' exchanges of Confidential Information related to Project Buffalo." (ECF No. 492, ¶ 67). As discussed above, on May 13, 2019, the parties exchanged emails confirming that they were making the Project Coho NDA retroactively applicable to Project Buffalo. (*Id.* ¶¶ 75-84); (ECF No. 496, ¶¶ 74-77). Danieli asserts that Mr. Losso and Mr. Pushis's

---

[10] In fact, Danieli's breach of contract claim relies on the premise that at least the confidentiality provision of the NDA was retroactively applied to Project Buffalo.

email exchange was meant to formalize the parties' earlier agreement that the Project Coho NDA would extend to Project Buffalo. (*Id.* ¶¶ 83-84). Did the NDA become applicable to Project Buffalo in March 2018 when the original NDA was signed, in October 2018 when the parties may have orally made the agreement effective to Project Buffalo, in May 2019 when the parties exchanged emails formalizing the agreement, in September 2018 when the previous exclusivity period expired, or an entirely different time? Based on the evidence presented by the parties, the Court holds that there is a genuine issue as to when, if ever, the second exclusivity period began and expired. When the exclusivity period occurred is material in determining whether Danieli breached the exclusivity provision as applied to Project Buffalo. Thus, the Court denies SDI's motion for summary judgment in relation to Danieli's alleged breaches of the NDA as applied to Project Buffalo.

> iii.   <u>A reasonable jury could determine that SDI waived its breach of contract claim.</u>

Danieli alternatively contends that "[e]ven if SDI had a cognizable claim for breach of contract, it has waived it." (ECF No. 491, p. 20). Danieli asserts that SDI knew for years that the QSP technology that Danieli was bidding to offer Project Buffalo would be "identical" to what Danieli was providing to Nucor. (*Id.*). Danieli contends that it informed SDI in November 2018 that it had been awarded the Nucor bid that included the sale of its QSP technology. (ECF No. 550, p. 15).

SDI responds that Danieli's arguments do not address Danieli's breach of the exclusivity provision during the parties' Project Coho negotiations, namely between March through September 2018. (ECF No. 525, p. 15). Rather, SDI contends that Danieli's arguments pertain to Danieli's later alleged breaches during the Project Buffalo bidding process. (*Id.*). Related to Danieli's conduct during Project Coho, SDI asserts that it did not know for certain that Danieli

breached the NDA until document production in this litigation. (*Id.* at 16). Under either time period, SDI argues that it did not implicitly or explicitly waive its breach of contract claim. (*Id.* at 16–21).

In its reply, Danieli argues that SDI's course of conduct, specifically its failure to act in light of learning about Danieli's sale of its QSP technology to Nucor, waives its breach of contract claim. (ECF No. 550, pp. 14–15). Danieli highlights that SDI participated in extensive negotiations regarding Project Buffalo, conducted a site visit to Danieli's reference plant in Russia, exchanged highly confidential technical and commercial information, and awarded Danieli the paint-line contract – all after learning of Danieli's alleged breach of the exclusivity provision. (*Id.* at 15). The Court holds that a reasonable jury could view SDI's actions following November 2018 as a waiver of its breach of contract claim. Thus, the Court denies SDI's motion for summary judgment with regard to its counterclaim.

Under New York law, "[a] breach of contract may be waived by the non-breaching party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585–86 (2d Cir. 2006) (citations omitted).[11] Waiver requires that a contractual right be "knowingly, voluntarily and intentionally abandoned." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006). Such abandonment "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Id.* (internal citations omitted). The party asserting waiver has the burden of proving the non-breaching party expressed a clear manifestation of its intent to relinquish its right. *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 681 F. Supp. 3d 81, 96 (S.D.N.Y. 2023).

---

[11] The Court is applying New York law in this analysis because the NDA contained a choice of law provision that neither party disputes applies to the substantive contractual issues. (ECF No. 171-1, p. 5).

However, waiver "should not be lightly presumed." *Id.* Generally, the existence of a party's intent to waive a contractual right is a question of fact. *Id.* "[M]ere silence, oversight or thoughtlessness in failing to object is insufficient to support an inference of waiver." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industries*, 784 F.3d 78, 95 (2d Cir. 2015) (internal citations omitted).

The Court notes that Danieli's waiver defense could apply to breaches of the Project Coho *and* Project Buffalo exclusivity periods, to the extent that the periods do not overlap. SDI argues that Danieli's waiver defense cannot apply to breaches of the Project Coho NDA. (ECF No. 525, pp. 15-16). However, when Danieli breached the exclusivity provision during the initial undisputed exclusivity period – from March 27, 2018, to September 27, 2018 – if SDI's conduct is construed as a waiver, that waiver could apply equally to the initial exclusivity period as well as any subsequent period applied to Project Buffalo. Based on the evidence presented to the Court, Danieli informed SDI on November 12, 2018, that it "signed a contract for a meltshop expansion and new QSP® line for Nucor Gallatin in Kentucky." (ECF No. 492, ¶ 122). On November 15, 2018, Mr. Losso emailed Mr. Pushis stating that Danieli had been selected to supply the Nucor Gallatin QSP caster and provided various technical descriptions of the plant and the equipment that would be used throughout. (*Id.* ¶ 126). On November 23, 2018, Danieli representatives sent an email to various SDI officials stating that Danieli's proposed QSP caster for Project Buffalo "is an exact copy of the one that we are going to commission at Shougang Jingtang in China by mid-2019 which is identical to the one we are supplying to Nucor Steel Gallatin as part of the mill expansion project recently announced." (*Id.* ¶ 127). Danieli also provided numerous presentations to SDI that described the Nucor's QSP caster as a reference. (*Id.* ¶ 133). For months after learning about Danieli's successful Nucor bid, SDI continued to engage in negotiations with Danieli. (*Id.*

¶ 140). SDI met with Danieli on at least six days to discuss the technical aspects of Project Buffalo, visited Danieli's reference plant in Russia, and awarded Danieli the paint line contract. (*Id.* ¶¶ 141-42).

The evidence could lead a reasonable jury to conclude that SDI knowingly, voluntarily, and intentionally abandoned its breach of contract claim against Danieli when it learned of Danieli's breach with Nucor in November 2018 and continued to engage in negotiations with Danieli regarding the same technology involved in the breach. A jury could view these affirmative actions, despite Danieli's known breaches, as displaying a clear intention not to pursue a breach of contract action against Danieli. On the other hand, a jury might find that SDI's further engagement with Danieli does not display a clear manifestation of an intent to waive Danieli's alleged breach. A jury could view these actions as wholly separate from Danieli's alleged breach. Given that intent is an intensely factual issue typically left for the jury, the Court holds that there is a genuine issue of material fact regarding whether SDI's actions following November 2018 waived its breach of contract claim. Thus, the Court denies SDI's motion for summary judgment with regards to its counterclaim.

  iv. <u>SDI is entitled to, at most, nominal damages.</u>

Danieli's final argument is that even if SDI does have a cognizable claim for breach of contract, SDI failed to identify any damages to which it is entitled. (ECF No. 491, p. 23). In light of SDI's failure to calculate actual damages, Danieli contends that SDI cannot now seek nominal damages without amending its complaint to specifically request such damages. (*Id.* at 28). But, Danieli asserts, "even if the Court does not grant summary judgment for Danieli on SDI's Counterclaim, it should grant partial summary judgment that SDI is entitled to no more than nominal damages." (*Id.*).

In response, SDI counters that New York law only requires nominal damages for a breach of contract claim to survive summary judgment. (ECF No. 525, pp. 21–22). Citing New York case law, SDI highlights that a plaintiff is not required to prove the amount of damages to defeat summary judgment because actual damages are not an essential element of a breach of contract claim. (*Id.* at 22). Thus, SDI asserts, nominal damages are recoverable to vindicate contractual rights. (*Id.*). SDI also contends that New York does not require a plaintiff to include a prayer for nominal damages in his complaint to preserve such a claim. (*Id.* at 24).

Danieli replies that SDI conflates substantive and procedural law. (ECF No. 550, p. 18). Danieli contends that "Third Circuit law" governs the requisite pleading standards and New York law governs the substantive breach of contract claim. (*Id.*). And thus, within the United States Court of Appeals for the Third Circuit, Danieli contends that there is no "escape hatch for claimants who fail to preserve nominal damages in their pleading." (*Id.* at 19). The Court holds that SDI properly sought nominal damages under New York law and grants Danieli's partial summary judgment motion limiting SDI to, at most, nominal damages.

As an initial matter, the Court must determine whether this issue is governed by New York law, as SDI claims, or "Third Circuit law," as Danieli claims. (ECF No. 525, p. 23); (ECF No. 550, p. 18). Danieli acknowledges that the NDA contained a New York choice of law provision. (ECF No. 550, p. 18). Danieli also correctly notes that "choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law." (*Id.* (internal citations omitted)); *see also Am. Energy Techs., Inc. v. Colley & McCoy Co.*, No. CIV. A. 98-398 MMS, 1999 WL 301648, at *2 (D. Del. Apr. 15, 1999). This, however, is where Danieli's argument falls apart. Elements that a party must plead to survive summary judgment are by their very nature substantive requirements. Danieli cites two cases, a Third Circuit case and a case from

the Eastern District of Pennsylvania, for the proposition that "in order to defeat summary judgment based on entitlement to nominal damages, a plaintiff must request nominal damages in its complaint or seek to amend its complaint to request nominal damages." (ECF No. 491, p. 28). Danieli argues that these cases establish "Third Circuit law" that claimants must preserve nominal damages in their complaint. (ECF No. 550, pp. 18-19). Danieli is wrong. The cases that Danieli cites do not set pleading standards for the Third Circuit.

In *Cohen v. Resolution Trust*, one of the cases cited by Danieli, the Third Circuit looked to *Pennsylvania law* to determine that, in Pennsylvania, claimants must seek nominal damages in their complaint. 107 F. App'x 287, 289 (3d Cir. 2004). Likewise, in *Brand Design Company, Inc. v. Rite Aid Corporation*, another case cited by Danieli, a district court in the Eastern District of Pennsylvania looked to *Pennsylvania law* to determine that a plaintiff must request nominal damages in his complaint to avoid summary judgment. No. CV 22-1174, 2024 WL 1164428, at *8 (E.D. Pa. Mar. 18, 2024); *see also Welding Engineers Ltd. v. NFM/Welding Engineers, Inc.*, 352 F. Supp. 3d 416, 434-35 (E.D. Pa. 2018) (citing Pennsylvania law to determine that nominal damages must be requested in the complaint); *Norfolk S. Ry. Co. v. Pittsburgh & West Virginia R.R. and Power Reit*, 2014 WL 2808907, at *19 (W.D. Pa. June 19, 2014) (applying *Pennsylvania* contract law to deny summary judgment on breach-of-contract claim where plaintiffs failed to plead damages with reasonable certainty, or to request nominal damages in their complaint, because plaintiffs sought leave to amend to request nominal damages).

As shown by the cases cited above, including cases cited by Danieli, federal courts view the issue of whether a plaintiff must request nominal damages in his complaint as a substantive issue governed by state law in diversity cases. *See McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994) (stating that federal courts apply the law of the state as announced by the highest

court when determining issues of state substantive law). Here, since the parties acknowledge that the NDA contains a choice of law provision, the Court looks to New York law to determine whether SDI properly pled its claim for damages.

Under New York law, "damages are not an essential element of a cause of action sounding in breach of contract, and nominal damages are recoverable to vindicate contract rights." *Panorama Catering, Ltd. v. Sherwood Suffolk Co*., 219 A.D.3d 1344, 1346 (N.Y. App. Div. 2023) (internal citations omitted). This is because "[w]henever there is a breach of contract or the invasion of a legal right, the law infers some damage." *Finley v. Atl. Transp. Co*., 115 N.E. 715, 718 (N.Y. 1917); *see also Hirsch Elec. Co. v. Cmty. Servs., Inc.,* 145 A.D.2d 603, 605 (N.Y. App. Div. 1988) ("It is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proved with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any."). Moreover, "a plaintiff may seek nominal damages at trial even if she did not explicitly request nominal damages in her complaint." *Fantasia v. Montefiore New Rochelle*, No. 19 CV 11054 (VB), 2022 WL 20540940, at *3 (S.D.N.Y. June 16, 2022); *see also OL USA LLC v. Maersk A/S*, No. 23 CIV. 10283 (PAE), 2024 WL 1704706, at *4 n. 5 (S.D.N.Y. Apr. 19, 2024) ("A complaint need not include a prayer for nominal damages to preserve such a claim.").

Considering New York law on nominal damages, Danieli has not shown that it is entitled to summary judgment. Even if SDI seeks only nominal damages, that is enough to survive summary judgment. It is irrelevant whether SDI requested nominal damages in its complaint. Further, Danieli requests that even if the Court does not grant summary judgment for Danieli, it should grant partial summary judgment that SDI is entitled to no more than nominal damages. SDI appears to concede that it cannot prove actual damages, and thus is only seeking nominal damages.

(ECF No. 495, p. 13 ("SDI concedes that at this juncture the *amount* of its damages cannot be proven without speculation.")); (ECF No. 591, pp. 10-11).  While a claimant generally has a right to proceed to trial on the issue of contract damages when the amount of damages is merely undetermined, courts may properly award only nominal damages at summary judgment when the existence of damage is "uncertain or speculative." *Contemp. Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir. 1977); *see also Maalouf v. Citigroup Glob. Markets, Inc.*, 156 F. App'x 367, 369 (2d Cir. 2005) (affirming limitation of damages at summary judgment to nominal damages); *Vanderburgh v. Porter Sheet Metal, Inc*., 86 A.D.2d 688, 688 (N.Y. App. Div. 1982) ("In the absence of a triable factual issue on the question of damages, Special Term properly awarded nominal damages on the cause of action for breach of contract.").  In light of SDI's concession that it is only seeking nominal damages, the Court grants Danieli's motion for partial summary judgment limiting SDI to seeking nominal damages for Danieli's alleged breach of the exclusivity provision.[12]

B.  Danieli's Count I (Breach of Contract)

SDI seeks summary judgment that Danieli is entitled to, at most, nominal damages on its breach of contract claim.  (ECF No. 498, p. 1).  It argues that (1) Danieli cannot show that the damages it seeks were caused by SDI's alleged breach; (2) Danieli improperly seeks a windfall; and (3) New York courts do not recognize damages flowing from the breach of NDA's that were entered into to discuss a potential transaction.  (*Id.* at 1-2).  Danieli opposes SDI's summary judgment motion and argues that (1) SDI's breach directly harmed Danieli; (2) Danieli is not

---

[12] The Court acknowledges that the parties dispute whether SDI is entitled to attorneys' fees and costs because of the indemnification provision in the NDA.  (ECF No. 525, p. 25).  The Court expresses no view on indemnification.  The Court's grant of partial summary judgment to Danieli limiting SDI to nominal damages has no bearing on indemnification.  The Court views damages and indemnification as separate issues.

seeking a windfall; and (3) New York courts recognize damages arising from contracts like the NDA at issue. (ECF No. 532, pp. 9-15). The Court holds that Danieli cannot show that its damages were caused by SDI's alleged breach. Thus, the Court grants SDI's summary judgment motion and holds that Danieli is entitled to, at most, nominal damages.

As a result of SDI's alleged breach of contract, Danieli is seeking to recover its out-of-pocket expenses incurred in preparing and participating in the Project Buffalo bidding process – totaling $638,940.00. (*Id.* at 12-13). Danieli argues that SDI's alleged breach of the confidentiality provision of the NDA lost Danieli the benefit of the bargain. (*Id.* at 13). Further, Danieli argues that it incurred expenses preparing and participating in the bidding process in reliance on SDI's obligation to maintain the confidentiality of Danieli's disclosed information. (*Id.*). Specifically, Danieli argues that *all* of Danieli's bidding costs were incurred in reliance on SDI's performance. (*Id.*). SDI argues that Danieli cannot recover its requested damages because SDI's alleged breach did not cause Danieli to participate in the bidding process. (ECF No. 495, p. 18).

Under New York law, "[o]ne who violates his contract with another is liable for all the direct and proximate damages which result from the violation." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (citing *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)). "Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages." *Id.* "[C]ausation in fact is established if the defendant's breach of duty was a substantial factor in producing the damage." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 351 (2d Cir. 2005).

With respect to reliance damages, "a plaintiff may recover damages based on his reliance interest, *including expenditures made in preparation for performance or in performance.*"

*Abraham v. Leigh*, 471 F. Supp. 3d 540, 565 (S.D.N.Y. 2020) (emphasis added) (internal citations omitted). "Reliance damages are recoverable provided they are proximate in effect, [] are not speculative or uncertain in character, [] were fairly within the contemplation of the parties when the [contract] was made or might have been foreseen as a consequence of a breach of its covenants." *Id.*

A plaintiff is also entitled to "special" or "consequential" damages "when they are the natural result of the wrong and when they were within the contemplation of the parties at the time the contract was made." *Vitol Trading S.A. Inc. v. SGS Control Servs. Inc.*, 874 F.2d 76, 79 (2d Cir. 1989). The New York Court of Appeals has held:

> The rule that damages must be within the contemplation of the parties is a rule of foreseeability. The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made. The breaching party need not have foreseen the breach itself, however, or the particular way the loss came about. It is only necessary that loss from a breach is foreseeable and probable.

*Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1010 (N.Y. 1993). Thus, the issues are (1) whether Danieli's expenses incurred during the bidding process were directly and proximately caused by SDI's alleged breach and (2) whether Danieli's expenses were reasonably foreseeable losses resulting from SDI's alleged breach of the confidentiality provision.

First, Danieli has presented no evidence or arguments that explain how SDI's alleged breach of the confidentiality provision directly or proximately caused Danieli to incur expenses in preparing its bid for Project Buffalo and participating in the bidding process. Danieli asserts that it "need not prove that SDI's breach caused Danieli to incur [] expenses, only that SDI's breach caused harm to Danieli." (ECF No. 532, p. 13). Danieli misunderstands the law of causation. As clearly established in case law, Danieli does need to prove that SDI's actions directly and

proximately caused its damages.  Danieli cannot recover the expenses it incurred during the Project Buffalo bidding process.  Its damages were not caused by SDI's alleged breach.

Second, Danieli cannot recover reliance damages, or any form of special or consequential damages.  The expenses Danieli incurred in the Project Buffalo bidding process were not foreseeable damages from SDI's alleged breach of the confidentiality provision.  Nothing in the NDA indicates that the parties contemplated these damages when entering the NDA.  Recovery of expenses incurred in a bidding process are not the natural result of breaching the confidentiality provision of an NDA.  The natural and foreseeable damages resulting from breach of a confidentiality provision are "damages caused by the fact that [a party] did not keep the information confidential." *Town and Country Linen Corp. V. Ingenious Designs, LLC*, No. 18-CV-5075 (LJL), 2022 WL 2757643, at *8-9 (S.D.N.Y. July 14, 2022).  Danieli does not claim any damages directly and proximately incurred by the disclosure of their confidential information.  Nor does Danieli attempt to explain how expenses incurred in preparing a bid are reasonably foreseeable damages resulting from breach of a confidentiality provision.  Instead, Danieli asserts that it "need only show that SDI's agreement not to divulge Danieli's Confidential Information caused Danieli's involvement in the [Project Buffalo] bidding."  (ECF No. 532, p. 15).  Once again, Danieli misunderstands the law of foreseeability and reliance damages.[13]  Danieli has not

---

[13] The cases that Danieli cites to support its argument are inapposite to the instant case.  For example, Danieli relies on *Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 71 (N.D.N.Y 2019) for its contention that it is entitled to reliance damages.  (ECF No. 532, pp. 10-11).  *Puebla* states that "not every minor breach entitles the other party to demand all its money back" instead, "[t]he injured party is limited to damages based on his *actual loss* caused by the breach."  403 F. Supp. 3d at 71 (emphasis added).  Further, *Puebla* is factually distinct from the instant case.  In *Puebla,* a musician entered an agreement with a production company to make an album.  *Id.* at 51-52.  The production company invested funds in producing the album but the musician subsequently abandoned the project.  *Id.* at 71-72.  The Court held that the production company could recover the money it invested in the album.  *Id.*  Unlike Danieli's claimed damages in the instant case, the production company's losses were directly caused by the musician abandoning the project.  When

produced any evidence that its requested damages were a foreseeable result of SDI's alleged breach.

In sum, the Court holds that Danieli has not shown that the damages it seeks were caused by SDI's alleged breach.  As discussed above, "nominal damages are recoverable to vindicate contract rights."  *Panorama*, 219 A.D.3d at 1346.  Thus, the Court grants SDI's motion for summary judgment limiting Danieli to seeking nominal damages for SDI's alleged breach of the confidentiality provision.[14]

### C.  Danieli's Count IV (Unjust Enrichment)

SDI also moves for summary judgment on Danieli's unjust enrichment claim.  SDI argues that "it is black letter law that a claim for unjust enrichment cannot arise where an express contract governs the subject matter of the dispute, and it is undisputed that the NDA governs here."  (ECF No. 495, p. 20).  SDI further argues that the evidence fails to show that Danieli conferred a benefit on SDI for which Danieli reasonably expected compensation, and Danieli's damages theory rests on "unsupported assumptions about causation."  (*Id.* at 20).  Danieli counters, in part, by raising two arguments.  First, it argues that Danieli's claim for unjust enrichment concerns conduct outside the scope of the NDA.  (ECF No. 532, p. 15).  Second, Danieli argues that a tort-based theory of

---

it invested funds in the album, the production company relied on the musician's promise that he would complete the album.  Here, Danieli did not incur expenses in reliance on a future return.  As SDI correctly notes, costs incurred in a bidding process are business expenses, not investments.

[14] Because the Court holds that Danieli cannot show that the damages it seeks were caused by SDI's alleged breach – limiting Danieli's possible damages to nominal damages – the Court does not reach the issues of whether Danieli is improperly seeking a windfall or whether New York courts recognize damages flowing from the breach of this type of NDA.  Further, as stated above, the Court's grant of summary judgment to SDI limiting Danieli to seeking nominal damages has no bearing on indemnification.

unjust enrichment based on the "tortious acquisition of a benefit" applies. (*Id.* at 11). The Court holds that, as pled and pursued, Danieli's unjust enrichment claim fails as a matter of law.

      i.    The existence of a direct contractual relationship between the parties precludes an unjust enrichment claim.

The Supreme Court of Pennsylvania has concluded that "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract*." Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (citing *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)); *see also Gee v. Eberle*, 420 A.2d 1050, 1060 (Pa. Super. Ct. 1980) ("[T]he essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties."). "Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).

Here, Danieli does not dispute the validity of the NDA. (ECF No. 532, p. 17). Instead, Danieli argues that "SDI's accused *tortious* conduct is not coterminous with the NDA." (*Id.* (emphasis added)). Danieli argues that SDI engaged Danieli in a "sham bidding process" so that it could use Danieli's confidential information to leverage additional benefits from SMS. (*Id.*). Danieli alleges that this conduct "was not contemplated by the NDA and thus falls outside the scope." (*Id.*).

Danieli's argument fails. Through the NDA, Danieli had a direct contractual relationship with SDI. The NDA created an obligation for SDI to not disclose Danieli's confidential information. Danieli has a right to sue to redress SDI's alleged breach of the confidentiality provision of the NDA. Therefore, under Pennsylvania law, no basis exists for an unjust enrichment claim, and Danieli's claim fails as a matter of law. Danieli argues that SDI's alleged sharing of its

confidential information during the Project Buffalo bidding process is outside the scope of the NDA. (*Id.* at 17). The Court does not credit this argument. The sharing of confidential information during the bidding process was the exact conduct governed by the NDA and falls directly within its scope.

Danieli cites various cases in support of its contention that the NDA does not preclude an unjust enrichment claim. (*Id.*). These cases are factually distinguishable from the instant case. *See Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 542 (W.D. Pa. 2018) (holding, at the motion to dismiss stage, that dismissal of an unjust enrichment claim was improper when *the parties dispute the enforceability* of the contract provision at issue); *Kraus Indus., Inc. v. Moore*, No. CIV.A. 06-00542, 2007 WL 2744194, at *8 (W.D. Pa. Sept. 18, 2007) (considering an unjust enrichment claim pled in the alternative to a breach of contract claim); *Quantum Commc'ns Ltd. v. Eagle F.*, No. 1:17-CV-01640, 2018 WL 3756694, at *9 (M.D. Pa. Aug. 8, 2018) (same). Here, unlike in *Liberty*, *Kraus*, and *Quantum*, there is no dispute as to the validity and enforceability of the NDA or the confidentiality provision. Thus, there is no reason to permit Danieli to plead unjust enrichment – it is not doing so as an alternative to a breach of contract claim. The Court holds that the existence of the NDA – an express contract between the parties – bars Danieli from bringing an action for unjust enrichment.

  ii. <u>Pennsylvania courts do not recognize a standalone tort-based unjust enrichment claim.</u>

Danieli further alleges that "Pennsylvania case law recognizes two species of unjust enrichment claims, one based on quasi-contract and the other sounding in tort." (ECF No. 532, p. 16). Thus, Danieli argues that if its quasi-contractual unjust enrichment claim fails, it should be able to pursue a tort-based unjust enrichment claim. (*Id.*). SDI counters by arguing that, in Pennsylvania, unjust enrichment does not sound in tort. (ECF No. 544, p. 15). Instead, it is a

quasi-contractual remedy. (*Id.*). Further, SDI notes that even if unjust enrichment sounded in tort, Danieli did not allege any tortious conduct. (*Id.* at 16). The only wrongful conduct alleged is that SDI breached the confidentiality provision of the NDA. (*Id.*). As SDI correctly notes, breaching a contract is not a tort.

In *Danieli Corp. v. SMS Grp., Inc.*, Danieli previously argued in this litigation that unjust enrichment may sound in tort. 2024 WL 3791894, at *13-18. The Court addressed SMS's motion for summary judgment against Danieli. In opposition to SMS's motion for summary judgment, Danieli raised the same argument that it brings before the Court now – that standalone tort-based unjust enrichment claims are recognized in Pennsylvania. *Id.*; (ECF No. 532, p. 16). The Court previously held that Pennsylvania does not recognize unjust enrichment as a standalone tort-based remedy. It will do so again today. For the sake of conciseness, the Court will not fully rehash its previous opinion. The Court incorporates by reference its previous opinion in this litigation. *See Danieli*, 2024 WL 3791894.

In short, "Pennsylvania courts have not 'adopted' any portion of the Restatement of Restitution that would serve as 'black-letter law' establishing that there is a stand-alone cause of action for unjust enrichment outside of the quasi-contractual context." *Id.* at * 14. Further, like in its prior brief, Danieli has not cited a single Pennsylvania case that squarely recognizes a stand-alone cause of action for a tort-based unjust enrichment claim. *See id.* (discussing the various cases that Danieli cites in support of its unjust enrichment tort-based theory); *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 560 (E.D. Pa. 2010) (holding that Pennsylvania law treats unjust enrichment as a form of quasi-contractual liability that will not substitute for an unsuccessful tort claim); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476 (E.D. Pa. 2016) (undermining the contention that an unjust enrichment tort-based claim can be maintained independently if the

underlying tort claim fails); *Steamfitters Loc. Union No. 42 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936–37 (3d Cir. 1999) (discussing the inability of a party to pursue a tort-based theory of unjust enrichment after the failure of the underlying tort claim). "*Steamfitters*, *Whitaker*, and *Zafarana* recognize that a tort-based claim for unjust enrichment cannot stand alone following the failure of the substantive tort." *Danieli*, 2024 WL 3791894, at *17.

Here, the underlying misconduct alleged is that SDI "induced [Danieli] to negotiate for the [Project Buffalo] bid so that SDI could extract more favorable terms out of SMS." (ECF No. 532, p. 16).  Once again, Danieli tries to reframe the narrative by using its subsequent pleadings to rewrite its complaint.  The only wrongful act that Danieli alleged in its Amended Complaint is that SDI breached the NDA by disclosing Danieli's confidential information to SMS.  (ECF No. 171, ¶ 134 (alleging that "[a]s a result of its improper disclosure of Danieli's confidential information to SMS, SDI has wrongfully taken Danieli's business opportunity"); ¶ 137 ("Permitting SDI . . . to be unjustly enriched by [its] unlawful disclosure of... Danieli's proprietary QSP-DUE® casting technology would be inequitable.")).  This is a standard breach of contract claim.  Danieli did not plead an underlying tort, and the Court finds Danieli's attempts to spin its complaint unconvincing.  The Court again holds that Danieli's unjust enrichment claim cannot stand alone without a substantive tort.  Thus, the Court grants judgment in SDI's favor on Count IV of Danieli's Amended Complaint asserted against SDI.

### V.    CONCLUSION

For these reasons, Danieli's motion for summary judgment as to SDI's counterclaim will be denied as to liability but granted limiting SDI to seeking nominal damages.  SDI's motion for summary judgment will be granted at Count IV of Danieli's Amended Complaint, limiting Danieli to seeking nominal damages at Count I, and denied as to SDI's counterclaim.  Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11/14/2024
Dated